CONLEY, J.T.C.
This is a case of statutory construction. It involves the interpretation of only seven words in the New Jersey Corporation Business Tax Act (1945), N.J.S.A. 54:10A-1 et seq., but the decision affects deficiency assessments totalling more than ten million dollars against some of the major oil companies in the United States.
Since the identical legal issue is presented in each of the separate complaints filed by 14 taxpayers, the matters were consolidated for hearing and disposition. Plaintiff-taxpayers have all filed motions for summary judgment and the Attorney General of New Jersey has filed a cross-motion for summary judgment in each case. The parties have filed thousands of pages of briefs, affidavits, deposition transcripts and exhibits in connection with the motions. Some of the record has been sealed by consent pursuant to R. 4:10-3 because of the confidential nature of the oil and gas industry.
Stated succinctly, the dispute is whether in computing their entire net income on which the New Jersey corporation business tax is in part assessed, these taxpayers may exclude or deduct the amount of any taxes paid or accrued to the federal government under the Crude Oil Windfall Profit Tax Act of 1980, 94 Stat. 229, 26 U.S.C.A. §§ 4986-4997. Plaintiffs argue that they may exclude their windfall profit tax liabilities from this computation and the Director of the Division of Taxation argues that they may not do so. Some of the federal tax obligations are substantial, of course, and it follows that it makes a substantial difference whether plaintiffs’ net income tax bases for corporation business tax purposes include or exclude the amounts of these federal tax obligations.
*54 • The seven statutory words to be construed are contained in the definition of “entire net income” found in N.J.S.A. 54:10A-4(K). Insofar as that section is pertinent to this matter it provides as follows:
(K) “Entire net income” shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets. For the purpose of this act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax; provided, however, that in the determination of such entire net income,
(2) Entire net income shall be determined without the exclusion, deduction or credit of:
(C) Taxes paid or accrued to the United States on or measured by profits or income____ [N.J.S.A. 54:10A-4(K)(2)(C); emphasis supplied]
The precise issue in this litigation, therefore, is whether the crude oil windfall profit tax is a tax “on or measured by profits or income” within the intent of the corporation business tax act. The intent of the act is paramount because, as the New Jersey Supreme Court observed very recently: “We continue to adhere to the view that our task is to ascertain the legislative intent.” Fedders Financial Corp. v. Division of Taxation Director, 96 N.J. 376, 385-86, 476 A.2d 741 (1984).
Although this is the threshhold issue, it has not been adequately addressed by plaintiffs. The court has been presented with a comprehensive and meticulous analysis of the crude oil windfall profit tax and the nuances of federal income and excise tax theory. However, little attention has been paid by the parties to what the apparent legislative purpose was in New Jersey in 1980 when the windfall profit tax was enacted by Congress.
*55 The net income provision was added to the corporation business tax in 1958. F.W. Woolworth Co. v. Taxation Division Director, 45 N.J. 466, 473, 213 A.2d 1 (1965). The crucial words in the present case were added to the corporation business tax at that time. L. 1958, c. 63, § 1. Much of the argument of the parties centers around the intent of the Legislature in 1958, but that argument is not very helpful. Since the Crude Oil Windfall Profit Tax Act of 1980 had obviously not been enacted as of then, the Legislature certainly did not intend in 1958 to deal specifically with this federal tax. This does not mean, however, that the Legislature was oblivious to the significance of the windfall profit tax when it was enacted in 1980.
The parties have briefed the court exhaustively on the executive and congressional response in the 1970’s to the actions of the Organization of Petroleum Exporting Countries (OPEC) in exercising their power to control the prices of crude oil in the international marketplaces. According to commentators, the windfall profit tax represented the climax of an intense, seven-year debate on national oil policy which raised an issue as to the appropriate distribution of the increased revenues expected to be derived by domestic oil producers as a result of OPEC’s actions. Drapkin and Verleger, “The Windfall Profit Tax: Origins, Development, Implications,” 4 B.C.L.Rev. 631, 633 (1981).
There is no need to dwell on the history or the intricacies of the windfall profit tax. It will suffice to say that the American public was acutely aware of and immediately affected by the oil crisis of the early 1970’s. The court takes judicial notice not only that petroleum products were in such short supply that government rationing was necessary, but also that retail prices of petroleum products reached levels previously unimagined in this country. In the face of these compelling circumstances, President Carter proposed the enactment of a windfall profit tax in conjunction with the gradual lifting of federal price controls on crude oil and refined petroleum products. In his televised address to the nation in which he made this proposal on April 5, 1979, President Carter said:
*56 I want to emphasize that this windfall profits tax is not a tax on the American people. It is purely and simply a tax on the new profits of the oil producers which they will receive but not earn. [15 Weekly Comp. Pres.Docs. 611 (April 5, 1979)]
Conscientious state legislators could have been mindful at that time of the possibility that enactment of the windfall profit tax act might have some impact on state revenues. Had they been concerned, they would have reviewed the language of the corporation business tax pertaining to the net income of corporations. In doing so, they would have been reminded that since 1958 corporations had been assessed a corporation business tax in part on the basis of “total net income from all sources, whether within or without the United States, ... determined without the ... deduction ... of ... [t]axes paid or accrued to the United States on or measured by profits or income____” N.J.S.A. 54:10A-4(k)(2)(C); emphasis supplied.
I am entirely satisfied, from the ordinary meaning of these words and from the public perception of the purpose of the windfall profit tax, that the legislators would have been reassured that no amendment of the statutory language was needed to protect the State’s revenue source. The Legislature could hardly have been more precise in 1979 than it had been in 1958 to make clear that plaintiffs could not deduct the windfall profit tax when making their determination of entire net income pursuant to N.J.S.A. 54:10A-4(K)(2)(C).
Plaintiffs offer a prodigious amount of scholarly analysis to argue that the windfall profit tax is not, in fact, a tax on profits or income and that the name of the tax is a misnomer. Be that as it may, the point is that the Legislature surely perceived the windfall profit tax to be a tax on profits or income and felt no need to amend the corporation business tax for that very reason. One cannot expect the Legislature to have a command of “the complex and often tortuous federal statutory scheme” of taxation. See Fedders Financial Corp. v. Taxation Division Director, supra, 96 N.J. at 405, 476 A.2d 741 (Handler, J., dissent).
*57 For this very straightforward reason, I hold that the Legislature in 1979 intended to include the Crude Oil Windfall Profit Tax Act of 1980 within the term “[t]axes paid or accrued to the United States on or measured by profits or income” as stated in N.J.S.A. 54:10A-4(K)(2)(C). Accordingly, plaintiffs were not entitled to deduct their windfall profit tax obligations in determining their entire net income for 1980.
Plaintiffs contend that this conclusion creates various constitutional problems, primarily under the Commerce Clause, the Equal Protection and Due Process Clauses, and the Supremacy Clause of the United States Constitution. However, as the Attorney General observes, the premise of plaintiffs constitutional arguments is wrong. Plaintiffs allege that this decision means that the net income tax base varies among corporate taxpayers, but the question here is only whether plaintiffs may claim a deduction from their net income tax base, not whether there should be an addition to that portion of the tax base. This decision has no effect on the character of the income included in the tax base.
As a corollary of this, it is also incorrect for plaintiffs to argue that federal law determines the amount of a taxpayer’s entire net income under the Corporation Business Tax Act. I subscribe fully to the construction of the act by Judge Andrew of this court, who has said:
There is no support for the proposition that federal income tax concepts are the definitional source of the terms utilized in the New Jersey Act.
While the starting point for determination of entire net income under the act is taxable income, before net operating loss deductions and special deductions, which the taxpayer is required to report for federal income tax purposes, the Corporation Business Tax deviates from the federal tax by providing its own inclusions and exclusions from the tax base. N.J.S.A. 54:10A-4(K). Only at the initial point is it indicated that the Legislature intended that federal standards were to be controlling. [International Flavors and Fragrances v. Taxation Division Director, 5 N.J.Tax 617, 624 (Tax Ct.1983), aff’d o.b. (App.Div.1984)]
*58 The deficiency assessments of the Director are therefore affirmed. The Clerk of the Tax Court shall enter appropriate judgments.